W. E. JOHNSON v. FORT WORTH & DENVER CITY
RAILWAY COMPANY.

No. 1660.

**Railway Company—Bill of Lading—Penalty for Refusing to Deliver Freight.**—An action against a common carrier, under Sayles' Civil Statutes, article 4258a (Act of May 6, 1882), to recover the penalty therein prescribed for refusal to deliver freight upon the payment or tender of the freight charges due "as shown by the bill of lading," can not be maintained where the bill of lading, while specifying

the rate per 100 pounds, and the weight of the car, provides, that the weights therein stated are "subject to correction," and does not give any data or reference by which the weight can be determined, other than the number of the car.

APPEAL from Wilbarger.    Tried below before Hon. G. A. BROWN.

*Stephens, Huff & Camp,* for appellant.—The court erred in sustaining the defendant's general exception to plaintiff's petition, because the facts set out in the petition and as alleged by plaintiff constituted a good and sufficient cause of action, and the general exception thereto should have been overruled.   Act May 6, 1882, 17th Leg., special session, p. 35; Sayles' Civ. Stats., art. 4258a, sec. 3; Railway v. Loonie, 84 Texas, 259; Railway v. Cruse, 83 Texas, 460; Railway v. Dwyer, 69 Texas, 707; Railway v. Dwyer, 75 Texas, 572; Railway v. Dwyer, 84 Texas, 194; Railway v. Harry & Bro., 63 Texas, 256.

*Stanley, Spoonts & Meek,* for appellee.—The court did not err in sustaining the general demurrer and third special exception of the defendant to plaintiff's petition, because said petition did not show any cause of action against the defendant.    Sayles' Civ. Stats., art. 4258a, secs. 2, 3; Schloss v. Railway, 22 S. W. Rep., 1014; Dillingham v. Fischl, 21 S. W. Rep., 554; Railway v. Loonie, 84 Texas, 259; Suth. on Stat. Con., secs. 347–350, 358.

TARLTON, CHIEF JUSTICE.—Exceptions were sustained to the petition of the appellant, plaintiff in the trial court, and we are required to consider whether the action of the court in sustaining them was correct.

The suit was brought to recover from the railway company, under the provisions of article 4258a, Revised Statutes, providing, (1) that it shall be unlawful for any railroad company to charge and collect from the owner or consignee of freight or goods a greater sum for transporting the freight or goods than is specified in the bill of lading; (2) that the company shall deliver the freight or goods to the consignee upon payment of the freight charges, "as shown by the bill of lading;" (3) that if the company shall refuse to deliver the freight or goods to the owner or consignee upon the payment or tender of payment of the freight charges due, *as shown by the bill of lading,* the company shall be liable in damages to the owner to an amount equal to the amount of the freight charges for every day the freight is held after payment or tender of payment of the charges due, *as shown by the bill of lading.*

The facts set out in appellant's petition may be thus stated with substantial accuracy:  The freight—a carload of implements worth $5000— was shipped on July 27, 1891, over the defendant's line, from St. Louis, Mo., to appellant, the owner, at Vernon, Texas, the defendant executing a through bill of lading to appellant as consignee.   In the bill of lading the car in which the merchandise was shipped was described as "No.

9737, St. L. I. M. & So.," and it contained a guaranty that the freight should not exceed 76 cents on the 100 pounds. The weight of the goods, as marked on the bill of lading, was 20,000 pounds. The bill of lading, however, provided that the weights therein stated were "subject to correction." When the goods reached Vernon it was found that there was a mistake in their weight, the true weight being 24,950 pounds, instead of 20,000 pounds. The freight due on this correct weight, at the rate stipulated, 76 cents per 100 pounds, amounting to $189.62, was tendered by the plaintiff to the company, and accepted by it. After receiving this sum, however, and examining the bill of lading, the agent of the company willfully refused to deliver the goods, demanding an additional sum of $71.91 as freight, and withheld the goods for seven days, trying to extort the additional amount named. The sum sought to be recovered was $1327.34, or $189.62 for each day of detention, the latter amount being the sum due upon the bill of lading, after correcting the weight of the freight.

The question for our determination is, whether the foregoing facts show a cause of action for the recovery of the penalty prescribed under the enactment referred to.

The answer to this question will depend upon the answer to the further question, were the true freight charges shown by the bill of lading? In other words, what is meant by the expression "as shown by the bill of lading," used in the statute with such emphatic repetition?

Where a recovery under this statute is sought upon a bill of lading reciting that the weights therein named are subject to correction, it is necessary to allege and prove that the weight stated in the bill is the true weight; and this in order to establish the fact (the burden to prove which rests upon the plaintiff) that there was an overcharge. Railway v. Loonie, 84 Texas, 262.

In Railway v. Nelson, 4 Texas Civil Appeals, 345, it was held by this court that, in the case of a bill of lading containing a similar clause, it was incumbent upon the plaintiff to show that he had tendered the correct weight, the effect of the clause "subject to correction" being to deprive the bill of lading of conclusive effect.

In Railway v. Roberts, 3 Texas Civil Appeals, 370, the rate did not appear in terms upon the bill of lading, but was stated therein to be "subject to the published tariff of the company." It was held that the published tariff, which was well known to the shipper, should be deemed a part of the bill of lading, which thereby showed the freight charges, within the statutory meaning. Approving this case, our Supreme Court, in Schloss v. Railway, 85 Texas, 602, uses the following language: "If the bill of lading contain the data, or refer to some other instrument from which data could be obtained, by which the amount due could be determined, it would no doubt be sufficient."

In Railway v. Wood, 23 Southwestern Reporter, 744, the bill of lading omitted any statement with reference to the freight on the

goods, and it was sought to supply the omission by means of an expense account furnished by the company, which showed the amount of the freight. This expense account was not referred to in the bill of lading, and it was held, following Railway v. Schloss, supra, that the expense account could not be used in aid of the contract, and that the latter would not support the action.

In Railway v. McCown, 26 Southwestern Reporter, 745, the bill of lading stated the rate per hundred weight, but did not state the number of pounds in the shipment, nor did it in terms refer to any instrument or data by which the weight could be ascertained. Our Supreme Court, by the refusal of a writ of error, has approved the opinion of the majority of the Court of Civil Appeals for the Third District, holding, on rehearing in that case, Fisher, Chief Justice, dissenting, that such an instrument is insufficient to sustain the action, under the statute here invoked.

The bill of lading described in the plaintiff's petition in the present case, while it specifies the rate per hundred pounds, does not in terms purport to state the true weight of the freight. Does it "contain data, or refer to some other instrument from which data could be obtained, by which the freight could be determined?" We must answer this question in the negative, unless the reference to the car in which the merchandise is shipped, as "No. 9737, St. L. I. M. & So.," suffices for this purpose. We are unable to hold this reference thus sufficient, because the effect of this would be, at most, to identify the merchandise shipped, presumably in all cases known both to the shipper and to the carrier, being an essential part of the bill of lading. We apprehend that in the McCown case, and in the Wood case, therein approved, the merchandise shipped was described in each instance in the bill of lading.

We are free to say, that if this could be viewed by us as an open question in this State, we would reach a different conclusion. It would seem to us, that by means of the bill of lading and the data furnished thereby, the amount of the freight charges upon this shipment could be established beyond a reasonable doubt, thus filling the measure of proof exacted by the rule of strictest construction. The following language of Caldwell, Judge, in Baird v. Railway, 41 Federal Reporter, 592, used in the interpretation of a similar statute, impresses us as quite forceful:

"The through rate of freight is stated in the bill of lading to be 45 cents per 100 pounds. That is the material part of the bill of lading on the subject of the freight to be paid for transporting the machinery. In the language of the statute, that is the 'sum for transporting said freight, specified in the bill of lading.' About that there was a contract. There was no contract about the weight of the freight. The weight of the freight is settled by the scales, and not by contract. Bills of lading are frequently issued before the weight of the freight is known. It is not necessary to the issuance of a bill of lading that

it should be known. The freight rate is fixed when the rate per 100 pounds is agreed on. Weighing the freight is purely a mechanical process. It may be done at the point of shipment, or at the point of delivery, or both. One hundred pounds in New Orleans is 100 pounds in Little Rock; neither more nor less. Where, as in this case, the weight of the merchandise is uniformly the same, the carrier or the consignee may ask to have the weight verified up to the moment of delivery. It is the weight disclosed by the scales, and not the weight marked on the bill of lading, that controls. The machinery weighed 25,550 pounds, and no agreement of the parties could add to or diminish this weight, nor could it be varied by fraud or by mistake."

In deference, however, to the ruling of our Supreme Court, we order an affirmance of the judgment.

*Affirmed.*

Delivered February 20, 1895.